UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KEVIN ALEXANDER WALLER, | ) | Case No. CV 12-4707-AJW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OF |
| | ) | DECISION |
| C. WOFFORD, et al., | ) | |
| | ) | |
| Respondent. | ) | |
| —————————————————— | ) | |

## Background[1]

On an afternoon in April 2009, Los Angeles Police Officers Jorge Gonzalez and Victor Escobedo were assigned to work a particular location in the city based on reports of illegal narcotics-related activity in the area. The officers saw Waller standing in the street, delaying the flow of traffic as he attempted to jaywalk. The officers stopped to

---

[1] The following summary is taken from the opinion of the California Court of Appeal. Independent review of the record confirms that the state appellate court's summary of the facts is a fair and accurate one. The Ninth Circuit has accorded the factual summary contained in an opinion of the California Court of Appeal a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). See, e.g., Slovik v. Yates, 556 F.3d 747, 749 n. 1 (9th Cir. 2009); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

1  issue Waller a traffic citation. When they approached him,
2  they smelled marijuana. Escobedo asked Waller why he smelled
3  marijuana. Waller told the officers he had a "sack of weed
4  in his pocket." Escobedo searched him. In Waller's coin
5  pocket, Escobedo found a small plastic bag containing a
6  substance resembling marijuana. Escobedo also found 11 other
7  small plastic bags containing a substance resembling
8  marijuana in Waller's right front pants pocket. In the same
9  pocket, Escobedo found $185 in small bills. Waller did not
10 have any paraphernalia with him to smoke or otherwise ingest
11 the drugs. Tests later confirmed the substance in the bags
12 was marijuana.

13 [Lodged Document ("LD") 8 at 2].

14       Petitioner was convicted of possession of marijuana for sale.  In
15 a separate proceeding, during which petitioner was represented by
16 counsel, the trial court found true the allegations that petitioner
17 had suffered two prior convictions, and a prior strike within the
18 meaning of the "Three Strikes" law.  He was sentenced to state prison
19 for a term of six years. [Clerk's Transcript ("CT") 267, 298, 322].

20       Petitioner appealed.  The California Court of Appeal affirmed his
21 conviction on October 26, 2011. [LD 8].  The California Supreme Court
22 denied petitioner's petition for review on January 25, 2012. [Petition
23 at 53].

24       In his petition for a writ of habeas corpus filed in this Court,
25 petitioner alleges that: (1) the trial court erred in failing to hold
26 a competency hearing; and (2) the trial court erred by denying his
27 motion for discovery of police personnel files pursuant to Pitchess v.
28 Superior Court, 11 Cal.3d 531 (1974). [Petition at 12].  Respondent

2

filed an answer to the petition.   Petitioner did not file a reply.

## Standard of Review

A federal court may not grant a writ of habeas corpus on behalf of a person in state custody

> with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412 (2000).

As used in Section 2254(d), the phrase "clearly established federal law" means "holdings of the Supreme Court at the time of the state court decision." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams, 529 U.S. at 412). Although only Supreme Court law is binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

Under section 2254(d)(1), a state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" about the correctness of the state court's decision. Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). This is true even where a state court's decision is unaccompanied by an explanation.   In such cases, the petitioner must show that "there

1    was no reasonable basis for the state court to deny relief." <u>Richter</u>,

2    131 S.Ct. at 784.

3        Relief is warranted under section 2254(d)(2), only when a state

4    court decision based on a factual determination is "objectively

5    unreasonable in light of the evidence presented in the state-court

6    proceeding." <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Davis v. Woodford</u>, 384

7    F.3d 628, 638 (9th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1165 (2005)).

8        Finally, state court findings of fact are presumed to be correct

9    unless petitioner rebuts that presumption by clear and convincing

10   evidence.   28 U.S.C. § 2254(e)(1).

11                              **Discussion**

12   **1.  The trial court's failure to hold a competency hearing**

13       Petitioner alleges that the trial court was required to conduct

14   a hearing on the issue of petitioner's competence to stand trial.

15   [Petition at 12 and attached pages].

16       The conviction of a defendant while he or she is incompetent

17   violates due process.  <u>Indiana v. Edwards</u>, 554 U.S. 164, 170 (2008);

18   <u>Drope v. Missouri</u>, 420 U.S. 162, 171 (1975).  In order to protect

19   against the trial of an incompetent defendant, the Supreme Court has

20   required that a trial court confronted with evidence raising a "bona

21   fide doubt" about a defendant's competency must order a competency

22   hearing <u>sua sponte</u>.  <u>Pate v. Robinson</u>, 383 U.S. 375, 385 (1966).

23       A defendant is incompetent if "he lacks the capacity to

24   understand the nature and object of the proceedings against him, to

25   consult with counsel, and to assist in preparing his defense." <u>Drope</u>,

26   420 U.S. at 171; <u>see</u> <u>Douglas v. Woodford</u>, 316 F.3d 1079, 1094 (9th

27   Cir. 2003) ("To be competent to stand trial, a defendant must

28   demonstrate an ability 'to consult with his lawyer with a reasonable

                                      4

degree of rational understanding' and a 'rational as well as factual understanding of the proceedings against him.'") (quoting <u>Godinez v. Moran</u>, 509 U.S. 389, 396 (1993) (internal quotations and citation omitted)).

"Although no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's demeanor before the trial judge, irrational behavior of the defendant, and available medical evaluations of the defendant's competence to stand trial." <u>Williams v. Woodford</u>, 384 F.3d 567, 604 (9th Cir. 2004), <u>cert. denied</u>, 546 U.S. 934 (2005). If a reasonable judge would have had a bona fide doubt about the defendant's competency, due process requires a trial court to hold a competency hearing. <u>McMurtrey v. Ryan</u>, 539 F.3d 1112, 1118-1119 (9th Cir. 2008).

A state court's finding that the evidence did not require a competency hearing under <u>Pate</u> is a finding of fact to which this Court must defer unless it was "unreasonable" within the meaning of section 2254(d)(2). <u>Davis</u>, 384 F.3d at 644. When reviewing a state court's failure to conducted a competency hearing, this Court may consider only the evidence that was before the trial court. <u>Williams</u>, 384 F.3d at 604.

In support of his contention that the trial court should have conducted a competency hearing, petitioner relies upon his behavior at trial. He argues that he made incomprehensible statements that demonstrated possibly delusional thinking and paranoia. He also suggests he might have been suffering from a condition he calls HIV-dementia. [Petition at 27-28]. The record contains the following evidence relevant to petitioner's claim.

At the beginning of the preliminary hearing, petitioner

indicated that he wished to represent himself and expressed dissatisfaction with his appointed counsel. The trial court held a hearing[2] to permit petitioner to explain why he was unhappy with his attorney. After the hearing, the trial court denied petitioner's motion for substitute counsel. [CT 1-3]. When petitioner repeated his request to represent himself, the trial court provided him with a written advisement and <u>Faretta</u> waiver.[3] Petitioner completed the form and the trial court reviewed it with him. Petitioner told the trial court that he had completed two years of college in Belize. [CT 3-4]. The trial court explained several items that petitioner had not initialed on the form and he indicated he understood the explanations. [CT 5-9]. In response to the trial court's advisements regarding the disadvantages of self-representation, petitioner said: "I would rather proceed myself, Ma'am, and make my own mistake. I would be the one fully accountable for my mistakes." [CT 7]. When the trial court asked petitioner to name the charges he faced, petitioner answered, "Possession for sales." [CT 8].

As the trial court continued its advisements, warning petitioner about the difficulties of proceeding without counsel, petitioner stated, "It's too difficult, Ma'am. It's way difficult." The trial court inquired, "What is way too difficult?" to which petitioner replied:

It's way difficult. It's weighing against me, and it's a lot. I'm going through a whole lot of stuff myself right

---

[2] The hearing was held pursuant to <u>People v. Marsden</u>, 2 Cal.3d 118 (1970).

[3] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

now.

[CT 10].

The trial court took a recess, and encouraged petitioner to confer with his counsel. [CT 10]. Following the recess, petitioner continued to request that he be allowed to represent himself. After further advisements, the trial court granted his request. [CT 12-14]. Standby counsel was appointed to assist him. [CT 89, 101].

Before trial, petitioner filed numerous relevant written motions, some of which were meritorious.[4] Immediately before trial, petitioner sought a translator because "some of the stuff I don't really understand, you know. My English ain't properly." [Reporter's Transcript on Appeal, date stamped January 6, 2011 ("1RT") 3].[5] When the trial court asked what language petitioner wanted translated, he answered, "Broken English." [1RT 3]. The trial court denied his request, explaining that it could not appoint an interpreter because petitioner spoke English, even if petitioner considered himself inarticulate. It reminded petitioner that his difficulties were part

---

[4]    Among the motions petitioner filed were discovery motions; motions for the appointment of an investigator and a fingerprint expert, both of which were granted; motions to set aside the information; a suppression motion; two Pitchess motions; a motion to dismiss based on alleged violations of Brady v. Maryland, 373 U.S. 83 (1963); a motion to dismiss based upon the deprivation of the right to a speedy trial; and motions to dismiss his alleged prior strike and previous felony convictions. [CT 41-65, 91-100, 119-137, 140-160, 190-199, 211-220].

[5]    Respondent has lodged two volumes of reporter's transcript, but they are not sequentially paginated.  One is date stamped January 6, 2011 and the other is date stamped May 10, 2011.  Respondent refers to the January 6, 2011 transcript as "1RT" and the May 10, 2011 transcript as "2RT." [Answer at 8, n. 5].  For convenience, the Court adopts respondent's abbreviations.  Respondent also lodged an augmented reporters's transcript, which is referred to as "ART."

of the disadvantages of representing himself and told him to let the trial court know if, at any time, he had changed his mind and wanted to be represented by counsel. [1RT 3-4].

Petitioner subsequently told the trial court that the case against him was "fabrication" and requested a hearing without the jurors present. The trial court pointed out that no jurors were present. [1RT 6]. Petitioner then inquired about missing documents. The trial court indicated that it could not understand what petitioner wanted. [1RT 7].

Later that afternoon, petitioner told the trial court that he was a witness in protective custody, apparently because he was going to testify against two inmates in murder trials. [1RT 10-11]. The prosecutor responded that she had no personal knowledge of that case and that it was not relevant to the present trial. [1RT 11]. Petitioner sought a negotiated disposition of his case and attempted to bargain with the prosecutor and the trial court. The prosecutor had offered petitioner a sentence of 32 months in exchange for a guilty plea, but petitioner refused the offer. He continued to seek a sentence that did not involve state prison. The trial court took a recess so that petitioner could confer with stand-by counsel. Nevertheless, petitioner was unwilling to enter any agreement other than one that resulted merely in probation. Petitioner explained that he was concerned about deportation. [1RT 13-16, 303-308].

Throughout the trial, petitioner had difficulty phrasing questions. He often referred to witnesses as "defendant." Portions of his cross-examination of Officer Gonzalez illustrate petitioner's struggles:

[PETITIONER]: I was going to ask like who activity log is

1 this?

2 THE COURT: Put the documents down for a moment. [¶] Ask him

3 whatever questions you wish to ask him about his testimony

4 on direct examination.

5 [PETITIONER]: Officer, what was the name of your partner the

6 date of the incident?

7 [GONZALEZ]: Officer Escobedo.

8 [PETITIONER]: Were you driving a marked police car on

9 4-7-09?

10 [GONZALEZ]: I am sorry.

11 [PETITIONER]: Were you driving a marked police car on

12 4-7-09?

13 [GONZALEZ]: Yes.

14 [PETITIONER]: Do you recall admit—do you recall—admit being

15 a dual on 4-14-2010 [sic]?

16 [PROSECUTOR]: I am going to object. I don't understand the

17 question.

18 THE COURT: I don't understand the question either. [¶] Could

19 you rephrase.

20 [PETITIONER]: Basically I am asking, on 4-14-2010, I am

21 asking the defendant [sic] do he admit being driver of dual

22 car. A marked dual car.

23 THE COURT: I am sorry. The date in question is 4-7-09. What

24 he was driving in 2010 wouldn't really be relevant. I am

25 going to ask you to rephrase your question if you have made

26 a mistake about the date.

27 [PETITIONER]: All right. Officer, who admit driver gold

28 color police dual on 4-14-2010 [sic]?

[1RT 907-908].

The trial court sustained the prosecutor's objection, and then spoke to petitioner out of the jury's presence. It asked if petitioner wished to reconsider his election to represent himself, and to instead have his standby counsel take over the representation.  Petitioner rejected this option and said he had been up all night preparing. He tried to explain:

> [PETITIONER]: I just want to know if the defendant have
> these in his person to keep going with the question and keep
> going. This is crip[p]led me from explaining myself, right.
> I would ask the court to give him my copy and I ask him
> stuff.
>
> THE COURT: I don't know what it is you are talking about. It
> hasn't been made clear to the court. I can't just give
> papers to somebody without stating the reason for it. He
> can't just read your documents. He needs to be responding to
> questions.

[1RT 908-909].

The jury returned.  After an additional admonition from the trial court about the need for petitioner to ask the witness questions, petitioner resumed his cross-examination.

> [PETITIONER]: Officer Gonzalez, were you driving a marked
> police car on 4-7-09?
>
> THE COURT: Was it a marked police car?
>
> THE WITNESS: No. It was unmarked.
>
> [PETITIONER]: On 4-7-09, while going Northbound, who
> searched the defendant near 45th Street?
>
> [GONZALEZ]: My partner.

1    [PETITIONER]: Page two of six police report. It doesn't add up.

2    THE COURT: Is that a question?

3    [PETITIONER]: Officer, don't Western Avenue got a speed

4    limit of 35 to 40 miles per hour?

5    [GONZALEZ]: I believe it is 35 miles an hour, I believe. It

6    is a major street.

7    [PETITIONER]: At which time partner Escobedo exit police

8    vehicle walking towards the defendant?

9    [GONZALEZ]: At which time?

10   [PETITIONER]: Yes.

11   [GONZALEZ]: When we observed the violation. Then my partner

12   and I both exit the vehicle.

13   [1RT 911].

14        After reviewing petitioner's trial behavior in detail, the

15   California Court of Appeal concluded that while petitioner obviously

16   experienced "significant difficulties in representing himself," the

17   record did not indicate that petitioner "lacked an understanding of

18   the nature of the proceedings or the ability to conduct his defense in

19   a rational manner." [LD 8 at 5-6].

20        The state appellate court's conclusion is a reasonable one in

21   light of the record. The evidence before the trial court reflected

22   a defendant who struggled to make his legal and factual arguments

23   understood, had difficulty asking legally appropriate and coherent

24   questions, and made inarticulate arguments in his attempt to present

25   a defense. At the same time, petitioner's conduct reflects that he

26   understood the proceedings. Petitioner actively participated in the

27   proceedings at each step. As set forth above, he filed numerous

28   relevant pretrial motions, including motions for discovery, a motion

for the appointment of an investigator, a motion for the appointment
of a fingerprint expert, a motion for sanctions, a motion to dismiss,
a motion to strike the prior felony conviction allegation, among
others. [See CT 34-38, 41-65, 84-88, 91-100, 103-107, 119-137, 140-
160, 190-199, 211-220].    He cross-examined the police officer
witnesses. [RT 907-931, 941-965]. In fact, petitioner was able to use
the documents he had received in discovery such as the police report
and a police activity log as a basis for his questions on
cross-examination. [RT 913, 942-957].    He also used the preliminary
hearing transcript to refresh a witness's recollection. [RT 942].  He
explained his theory of the case in a brief opening statement and made
a closing argument.[6]    See, e.g., Stanley, 633 F.3d at 861 (stating
that the facts that "a defendant is alert, unafraid to address the
court, and able to use somewhat technical legal terms appropriately is
a factor suggesting that a competency hearing is not required")
(citation and internal quotation marks omitted).

Petitioner's difficulties asking questions and presenting
evidence that might support a defense did not necessarily raise the
possibility that he was unable to understand the nature of the
proceedings against him.   Instead, his difficulties appear to have
arisen "from his lack of legal training, his focus on legally
irrelevant points, and his difficulty with English." [LD 8 at 6].   In

---

[6] When asked whether he would like to make an opening statement,
petitioner offered: "Um, I am denying the charge, Your Honor,
because I was lawfully walking down a public street. Somebody had
really had these officers attack me basically." [1RT 611].   In
closing argument, petitioner addressed the jury and asked them to
pay close attention to the photographs depicting the site of his
arrest, arguing that he was arrested without probable cause.  He
also argued that the officers were lying. [1RT 1209-1210].

addition, petitioner's difficulties may have been exacerbated by the fact that he did not possess any apparent defense to the charges.

Finally, nothing suggested that petitioner had a history of mental illness or a prior determination of incompetency. No medical or psychiatric evidence regarding petitioner's mental health history was presented to the trial court. Nor did either his appointed or his standby counsel raise a concern about petitioner's competency. See Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991) ("We deem significant the fact that the trial judge, government counsel, and [petitioner's] own attorney did not perceive a reasonable cause to believe [petitioner] was incompetent").

While petitioner arguably was inept in his presentation of his case, and while he may have had only a shaky grasp of the concept of legal relevancy, the state appellate court's conclusion that his behavior was not so erratic or irrational that the trial court should have experienced doubt about his competency to stand trial was not an unreasonable one.

**2. The trial court's denial of petitioner's motion for discovery**

Petitioner also alleges that he was denied his right to discovery of police personnel records pursuant to Pitchess v. Superior Court, 11 Cal.3d 531 (1974). He contends that the error deprived him of due process and his right to confrontation. [Petition at 20, 32-41].

Under California law, a criminal defendant is entitled to discovery of information in police personnel records that would support a defense to the charges. To obtain discovery of otherwise confidential personnel records, the defendant must establish good cause, which means that he or she must support the motion with affidavits that present "a specific factual scenario of officer

misconduct that is plausible when read in light of the pertinent documents." <u>Warrick v. Superior Court</u>, 35 Cal.4th 1011, 1025 (2005)

Prior to trial, petitioner filed two motions for discovery of police personnel records pursuant to <u>Pitchess</u>. [CT 66-83, 119-137]. In his declaration in support of the motions, petitioner denied the officers' account of the arrest and alleged that he did not have any drugs in his possession. Petitioner explained that he was lawfully walking along the public street, the police searched him without cause, the drugs were "planted" on him by the officers, and the police report was written as a "cover up of unprofessional action." [CT 69, 122]. No police report was attached.

The first motion was denied without prejudice based upon petitioner's failure to show good cause – namely, petitioner's failure to present a plausible factual scenario or an alternative version of events that would suggest police misconduct. [ART 42]. The trial court instructed petitioner to add more detail about what allegedly happened. [ART 42-43].

Petitioner's second <u>Pitchess</u> motion included the same declaration, with the addition of the date of the arrest. [CT 122]. The trial court denied the motion, finding that petitioner failed to attach the police report and failed to establish good cause for discovery. [ART 56-57].

The California Court of Appeal found that the trial court properly determined that petitioner had not established good cause for the discovery. [LD 8 at 10-15].

A person in custody pursuant to the judgment of state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States. See 28 U.S.C. § 2254(a). The writ is not available for violations of state law or for alleged error in the interpretation or application of state law. Swarthout v. Cooke, __ U.S. __, 131 S.Ct. 859, 861 (2011) (per curiam); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

As pleaded, petitioner's challenge fails to present a federal question because "alleged errors in the application of state law are not cognizable in federal habeas corpus." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996), cert. denied, 522 U.S. 881 (1997). Petitioner has not cited, and the Court is not aware of, any clearly established federal law requiring the trial court to provide criminal defendants with police personnel files absent a showing that the files might contain material evidence. See Dyer v. Harrington, 2012 WL 5188028, *8-9 (C.D.Cal. 2012) (rejecting a claim that the trial court erroneously denied petitioner's Pitchess motion, and finding that it failed to present a cognizable federal question); see generally, Harrison v. Lockyer, 316 F.3d 1063, 1066 (9th Cir.) (finding no denial of due process where discovery was denied to a defendant who had failed to make a showing that a police personnel file contained evidence material to the defense), cert. denied, 538 U.S. 988 (2003).

Even if petitioner's claim were liberally construed to implicate the due process right to receive material exculpatory and impeachment evidence under Brady v. Maryland, 373 U.S. 83, 86-87 (1963), he would not be entitled to relief.[7]   To establish a Brady violation, a petitioner must show three things: that the evidence was favorable to him because it was either exculpatory or impeaching; that the evidence

---

[7]   Furthermore, petitioner has not exhausted such a claim.

was suppressed by the prosecution either willfully or inadvertently; and that he was prejudiced by the nondisclosure. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-282 (1999).

Evidence is material for <u>Brady</u> purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). Disclosure of a requested file is not warranted unless the defendant first "establish[es] a basis for his claim that it contains material evidence." <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 58 n. 15 (1987); <u>Harrison</u>, 316 F.3d at 1066. This requirement of a threshold showing of materiality also applies to <u>Pitchess</u> requests. <u>Harrison</u>, 316 F.3d at 1066 (noting that the <u>Pitchess</u> process operates in parallel to the procedure described in <u>Brady</u> and <u>Ritchie</u>, but noting that the state standard is "both a broader and lower threshold for disclosure" than the <u>Brady</u> standard).

As the trial court observed in denying petitioner's <u>Pitchess</u> motions, petitioner failed to make a preliminary showing of materiality in support of his motion. Petitioner's argument about the discovery of the officers' files was premised solely on the possibility that those records might contain other instances in which the deputies allegedly fabricated information. Likewise, petitioner's claim for habeas relief based on the denial of his <u>Pitchess</u> motions is not supported by any evidence of actual incidents in the officers' files. Instead, petitioner relies only on speculation and hope that the undisclosed files may have included complaints against the officers which might have some impeachment value. But speculation and

hope do not suffice to show that the personnel files contained any
information or evidence material to his defense. See <u>United States v.
Michaels</u>, 796 F.2d 1112, 1116 (9th Cir. 1986) (stating that a
defendant's "mere speculation about materials in the government's
files does not require [a] ... court under <u>Brady</u> to make the materials
available for [a defendant's] inspection") (internal quotation marks,
brackets and citation omitted), <u>cert. denied</u>, 479 U.S. 1038 (1987);
<u>see also</u> <u>United States v. Agurs</u>, 427 U.S. 97, 109-110 (1976) ("The
mere possibility that an item of undisclosed information might have
helped the defense, or might have affected the outcome of the trial,
does not establish 'materiality' in the constitutional sense."). 
Because petitioner's discovery motions made no preliminary showing of
materiality, he cannot establish a due process claim based on being
denied access to the requested files. See <u>Harrison</u>, 316 F.3d at 1066
(rejecting a petitioner's challenge to the trial court's denial of <u>a
Pitchess</u> motion because the petitioner failed to make threshold
showing that the files contained information material to his defense);
<u>see also</u> <u>Rubin v. Uribe</u>, 2012 WL 4848673, *5 (C.D.Cal. 2012)
(rejecting a claim that the trial court deprived the petitioner of due
process by denying his <u>Pitchess</u> motion as without merit "[s]ince
petitioner has not made any showing that the personnel records in
question actually contain any information that is material to his
defense"), <u>report and recommendation adopted</u>, 2012 WL 4840092
(C.D.Cal. 2012); <u>Gutierrez v. Yates</u>, 2008 WL 4217865, *7 (C.D.Cal.
2008) (absence of proof that exculpatory evidence would be found in
police personnel records "is fatal to petitioner's due process
claim"), <u>report and recommendation adopted</u>, 2008 WL 1694465 (C.D.Cal
2008); <u>Gomez v. Alameida</u>, 2007 WL 949425, *15-16 (N.D.Cal. 2007)

(holding that the state court's denial of a discovery request under Pitchess did not violate the petitioner's constitutional rights where the petitioner had not made the requisite showing of materiality under state law) (citing Harrison, 316 F.3d at 1066).

### Conclusion

Because the state court's determination of petitioner's claims was neither contrary to, nor an unreasonable application of, clearly established federal law, petitioner is not entitled to relief. Accordingly, the petition for a writ of habeas corpus is denied.

Dated: November 19, 2012

Andrew J. Wistrich
United States Magistrate Judge